In the Matter of the Will of FRANK A. DILLENBACK, Deceased.

Surrogate's Court, Jefferson County, July 8, 1947.

*Paul E. Brown* for Northern New York Trust Company, petitioner.

*Donald Wiltse* and *Norman F. Ward* for Francis Miller and another, respondents.

WRIGHT, S. The last will and testament of Frank A. Dillenback probated in this court on December 27, 1929, provides:

" Second: I give and bequeath to Frances Jeannie Miller, daughter of Charles and Frances Miller of Washington, District of Columbia, the sum of One Thousand Dollars ($1000.00), and I hereby make the same a charge on my real estate and payable as hereinafter set forth.

" Third: I give and bequeath to the Northern New York Trust Company of Watertown, New York, the sum of Fifteen Hundred

Dollars ($1500.00), in trust nevertheless for the following uses and purposes: To hold and invest the said fund and to apply the net income therefrom upon the annual salary of the Pastor of the Chaumont Methodist Episcopal Church, and I hereby make the same a charge on my real estate and payable to said Trust Company as hereinafter set forth.

" Fourth: Subject to the foregoing legacies all the rest, residue and remainder of my property of every name and nature and wheresoever situate, I give, devise and bequeath to my sister, Nellie Ashwin of Chaumont, New York, on condition, nevertheless, that she pay the said One Thousand and the said Fifteen Hundred Dollars ($1500.00) legacies provided in the second and third clauses of this my Will at the time of or before she shall sell any part of the real estate of which I may die seized, or, should she retain my said real estate, said legacies to be paid immediately upon her death, said legacies and each of them to be continuing charges until paid upon all real estate of which I may die seized."

Nellie Ashwin died in 1942. She did not sell the real estate during her lifetime. The legacies specified in provisions second and third, which were made charges upon the real estate, have not been paid.

There seems to be no question that the legacy in the provision second is now a charge upon the real estate.

The issue here is as to whether the legacy in the third provision is now a charge upon the real estate. The question is raised because of the changed circumstances of the Chaumont Methodist Episcopal Church.

The village of Chaumont has a population of between five hundred and six hundred people. At the time of decedent's death there were two Protestant churches — the Methodist Episcopal Church and the Presbyterian Church.

At a meeting of the congregation of the Methodist Church held on March 24, 1941, this resolution was passed: " Resolved that in view of the result shown by the community canvass and the ballot at the donation, it is the opinion of this annual meeting that the Methodist Society unite with the Presbyterian Society, and with this request refer the matter to the Northern New York Conference ":

On May 14, 1941, the Northern New York Conference of the Methodist Church adopted this resolution:

" Owing to the merger of the Methodist Church and the Presbyterian Church at Chaumont, New York, and the forming of a Presbyterian Church, the properties of the former Methodist

Church consisting of church building and parsonage will no longer be used for Church purposes. Therefore,

" Resolved, That the Trustees of the Northern New York Conference of the Methodist Church be authorized and empowered to handle all business in the care of these properties and the disposition of them, together with all assets and trust funds, if any."

On May 19, 1941, the same Conference adopted this resolution:

" Whereas, An adjustment has been made in the village of Chaumont, whereby the Methodist Church has united with the Presbyterian Church in almost its entirety, and, from present appearances and understandings, there will never be a Methodist Church in the village again, and

" Whereas, the Methodist Church desires that the utmost success shall attend the efforts of the Presbyterian Church of the village in its Christian service, therefore

" Be It Resolved: that the Northern New York Conference hereby declare the Chaumont Methodist Church to be a closed church and authorizes and instruct the Trustees of the former Chaumont Methodist Church of Chaumont, New York, or the Trustees of the Northern New York Conference to dispose of the property of which the Methodist Church is possessed, according to the discipline of the Methodist Church and the laws of the State of New York, and instruct the proper officers or agents to prepare and execute all necessary papers, petitions and documents to conclude the disposal and transfer of Methodist properties in Chaumont (subject to the satisfaction of any debts and obligations), to the Presbyterian Church of Chaumont.

" Be It Further Resolved, that the church bell shall go to the Brownville Church; that the pews and other church furniture be sold or donated by the District Superintendent of the Black River-Ontario District to other churches according to his judgment."

Prior to the closing of the Methodist Church there was an arrangement whereby services were held in the Methodist Church part of the year and in the Presbyterian Church during the remainder of the year.

At the time the Methodist Church ceased to function as such, it carried seventy members on its rolls, including nonresidents. A substantial number of former members of the Methodist Church have since joined the Presbyterian Church which is holding regular services. One of the former Methodist Trustees is now on the Board of Trustees of the Presbyterian Church and there is at least one other member on the latter board who came from the former Methodist Church membership.

While it does not appear that there was a legal merger of the corporate entities of the two churches, I believe that for all practical purposes the congregations have united for the maintenance of a place of religious worship.

Whenever it shall appear to the court that circumstances have so changed as to render impracticable or impossible a literal compliance with the terms of a will containing a gift for religious and charitable purposes, the court may direct that such gift be administered or expended in such manner as in the judgment of the court will most effectually accomplish the general purpose of the instrument. (Personal Property Law, § 12.)

The cy pres doctrine proceeds upon " the principle that it is the duty of the court to give effect to the general intention of the testator." (*Camp* v. *Presbyterian Society of Sackets Harbor,* 105 Misc. 139, 145.)

" The permitted degree of departure is expressed by the words ' cy pres,'— signifying that in the control and administration of the trust by the court the testator's design is to be adhered to as *nearly* as may be. * * * The underlying theory is that the property has been unconditionally devoted to public use, and can in no circumstances be claimed by individuals." (2 Davids on New York Law of Wills, § 626, pp. 1036–1037.)

The exercise of the cy pres doctrine always involves a large measure of discretion. (*Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462, 473.)

No general rule can be enunciated as to the manner in which the cy pres doctrine will be applied. Each case must necessarily depend upon its own peculiar circumstances. (*Matter of MacDowell,* 217 N. Y. 454, 466.)

I am of the opinion that the cases relied upon by the respondents are not controlling under the peculiar circumstances of this will.

Of the two legacies which were made charges upon real estate, the one for religious purposes was the larger. This, coupled with the fact that the testator insured payment of the legacy by charging it upon his real estate, compels me to conclude that there is no doubt the testator intended this sum be used for religious purposes rather than to pass to individuals.

Since it ceased to function a substantial number of the former members of the Methodist Church have become members of the Presbyterian Church, the only Protestant church remaining in the village. Since it is clear that the purpose of the testator was to further the opportunity for religious worship in the

village of Chaumont, I conclude that his purpose will be most nearly approximated by directing that the income from this fund be applied toward the payment of the salary of the pastor of the Chaumont Presbyterian Church.

I hold that the gift under the third provision of the will is valid and effective for the purposes as set forth above.

Submit decree upon five days' notice.