Hugh S. Coyle, J.
This is an action commenced by the heirs at law and next of kin of John G. Bawn, deceased, for a declaratory judgment, holding that the trust created by the will of the said John G. Bawn, deceased, has failed and that the remainder and residue of the said decedent’s estate has reverted to and *1062 become the property of the plaintiffs herein, and also directing that defendant Society deliver to plaintiffs the proceeds of the said estate held by it.
Plaintiffs have moved this court, pursuant to rule 109 of the Rules of Civil Practice for an order striking out the first, second, third, fourth and fifth affirmative defenses contained in the defendant Society’s answer.
The defendant Society has moved by cross motion for an order, pursuant to rule 113 of the Rules of Civil Practice, and section 476 of the Civil Practice Act, for judgment dismissing the complaint of the plaintiff on the merits.
The will of John G. Bawn, deceased, provided in the second paragraph as follows: “ I do order and direct my just debts to be paid, and all the remainder and residue of my estate, I give and bequeath to the Foreign and Domestic Missionary Society in the United States of America, to hold in trust, for the purpose of Founding or Establishing a Missionary Training School for Chinese Girls and Young Women, and to be placed in some suitable locality in China.”
John G. Bawn died a resident of the City of Philadelphia, Pennsylvania, in the year 1928. His last will and testament, dated September 25, 1922, was admitted to probate on September 30, 1928, in the Orphans’ Court of Philadelphia County, Pennsylvania.
On or about November 17, 1934, the executor of Bawn’s estate transferred and delivered to the defendant Society, a resident of this State, all the moneys, assets and properties constituting the remainder and residue of the estate and the defendant Society has held those assets in its possession and control up to the present time.
Subsequent to November of 1934 studies were made to determine the most suitable location in China for the school; however, the political turmoil of the country, first by reason of the Japanese invasion in 1935, then the entry of the United States into World War II, and finally in 1948 by civil war in China which resulted in the formation of the People’s Republic of China, the present Communist dominated government, prevented literal compliance with the provisions of the will of the Rev. Bawn. In 1950 with the establishment of the Chinese People’s Republic the military and political situation in China caused the discontinuance by defendant Society of all of its charitable, missionary, religious, educational and hospital work on the mainland of China. It necessitated the withdrawal of its American missionary staffs, cut off communication at large *1063 with its fellow churchmen on the China mainland and thereby rendered it impossible to remit funds to China for the use and purposes designated by the will of Rev. Bawn.
Because of the military and political conditions now existing in China, millions of the Chinese people who are opposed to the Communist government were caused to flee from the mainland and seek refuge in Hong Kong, the Philippines, Malaya, Formosa and other parts of southeast Asia. These refugees are known as the Chinese of the Dispersion, and they are, in a great many eases, in extreme want of food, clothing, housing, jobs and spiritual nurture.
Since the Bawn will contained no express provisions for the reversion of the corpus of the trust to heirs or residuary legatees of the testator in the event of failure or inability on the part of the Society to carry out the conditions of the gift, on November 3, 1955, defendant Society filed a petition, pursuant to the provisions of article 79 of the Civil Practice Act, by which it requested the Supreme Court, New York County, to apply the cy pres doctrine to the trust and in the exercise of sound discretion to authorize and instruct the Society to make application of the income from the trust for certain allied purposes until such time as conditions in China should permit resumption of the Society’s previous activities in that country and the disposition in China of the income from said trust in accordance with the desire of the testator thereof. The Attorney-General of the State of New York appeared in the action. The Society moved to have a Referee appointed to hear and report upon the matters set forth in its petition. Upon the filing of the Referee’s report a final order was made on December 6, 1956, by Mr. Justice Irving L. Levey, at Special Term, Part I, of the Supreme Court, New York County. By that order it was found, adjudged and determined that the cy pres doctrine was applicable to the Bawn trust and others incorporated in the same proceeding. The court further ordered, in the exercise of its discretion, that defendant Society be authorized and instructed to make application of the income only of the funds without any unnecessary accumulation thereof for the kindred charitable purposes set forth in the petition, until such time as conditions in China permitted resumption of the defendant Society’s previous activities therein and the disposition of the income from such funds in accordance with the desires of the donors thereof. Since the date of the order the Society has been expending the income from the Bawn trust in the manner as seen by the Supreme Court to be most closely akin to that envisioned by Rev. Bawn. The prin *1064 cipal has been preserved and awaits a change of political conditions on the Chinese mainland.
The issues and questions of law presented by the plaintiffs’ motion to strike the affirmative defenses interposed in defendant Society’s answer and the Society’s cross motion for summary judgment are virtually identical. The plaintiffs contend that the charitable purpose provided for in the will of the Rev. Bawn has been frustrated permanently by the changed political conditions in China; that no kindred charity would effectuate satisfactorily the testator’s intent; and that, therefore, they are entitled to the corpus and accumulated income of the trust.
The defendant Society, on the other hand, contends that the Bawn trust vested in it some 25 years prior to the commence-, ment of this action, and has been actively and responsibly administered by it ever since; that the Bawn will does not provide for a gift over to plaintiffs in the event that changed conditions should permanently or temporarily prevent the continual maintenance of the missionary school in China; and that a court of competent jurisdiction has already determined that the Bawn will expresses a general, rather than narrow, charitable intent, and that the cy pres doctrine is applicable.
The principal issue, therefore, before this court is whether or not the cy pres power should continue to be exercised to preserve a charitable gift.
Although the defendant Society has set out in its answer affirmative defenses that the cy pres order of December 6, 1956, “ * * * is res judicata in respect of and a complete bar to the cause of action alleged in the complaint herein ” and 11 That the issues tendered and the questions of fact and law raised by the plaintiffs’ complaint herein were fully litigated and finally and conclusively determined in said prior special proceeding, wherein the plaintiffs and any interest had by them in said fund were represented, as aforesaid, and by reason thereof the plaintiffs herein and each of them are now estopped and barred from bringing this action ”, the defendant Society in its memorandum has, in fact, conceded that the prior proceeding is not res judicata and does not act as an estoppel. The Society does, however, urge that any asserted rights which the plaintiffs may have had in the fund were conclusively determined by the cy pres order of December 6, 1956, and, therefore, that order is final and not open to collateral attack.
An examination of the will in question discloses to this court a general charitable intent. It is obvious that Mr. Justice Levey also so found, otherwise he may have reasonably refused the *1065 Society’s application for cy pres. The fact that other gifts and funds were considered in former proceedings for cy pres relief does not alter the finding of a general charitable intent. In addition, it is significant to note that the Bawn trust was the largest single fund under consideration before the New York Supreme Court. The facts in this case present a striking similarity to those in Matter of Bowne (11 Misc 2d 597). There, the tuberculosis hospital to which the fund was bequeathed operated for some 25 years measured from the date of decedent’s death. Progress of the medical profession against this disease made the operation of the institution unnecessary. Application was made to apply the funds towards the maintenance of similar charitable institutions. The court applied cy pres, although there, as here, the institution was a memorial to the unselfish philanthropy of the decedent and his spouse, called the Samuel and Nettie Bowne Hospital. Surrogate Cox, in his opinion (11 Misc 2d 597, supra), distinguished the holding in Matter of Syracuse Univ. (Heffron) (3 N Y 2d 665), heavily relied upon by the plaintiffs, and, in part, stated (p. 600): “ The recipients of the residuary estate, the remaindermen and the special guardian have sought to make much of the fact that the bequest in question was made to a specific hospital which has now ceased to function. From this they seek to spell out that there was no general charitable intention on the part of the decedent and that this legacy should now, therefore, lapse and fall into the residuary estate. They cite as most recent authority for this the Matter of Syracuse Univ. (Heffron) decided by the Court of Appeals on February 20, 1958 (3 N Y 2d 665). In that case, the Court of Appeals reversed the Appellate Division which had applied the cy pres ■ doctrine. However, the facts are easily distinguishable. The testator in the Heffron case made a gift to the Syracuse University for the benefit of its Medical College upon condition that within one year after the date of the testator’s death the ‘ “ Medical College thereof shall be assured of permanency and of support adequate to keep the same forever in the rank of ‘ Class A ’ medical schools as now classified by the Council on Education of The American Medical Association.” ’ (p. 670). The very condition imposed by the testator in his will indicated that if the conditions and qualifications were not met, the legacy was to fail. When the Medical College went out of existence, the legacy in fact did fail and the Court of Appeals so held. In that very case, (the case of Syracuse Univ. [Heffron], supra), which is relied upon by the recipients of the residuary in support of their position, *1066 Judge Van Voorhis speaking for the majority made the following statement (pp. 669-670): ‘ One may safely conclude that if this gift had been phrased in language saying without more that the money was to go toward the support of the College of Medicine of said University, the substance of the gift would not revert to the estate in event of the discontinuance of the medical college. That would probably follow from the liberality of the rules which the courts have adopted in order to save charitable gifts by the application of cy pres (Matter of Potter, 307 N. Y. 504, 517, supra; Matter of Durbrow, 245 N. Y. 469, 474).’ ”
Here there can be no question that the testator manifested a general charitable intent. He provided for no gift over in the event of failure of the express provisions of the bequest. He made no bequests to living relatives although known to him. He left all his money to a charity with which he was very familiar and to which he had devoted his life. But in addition to this there is the inescapable fact that the main issue involved in the litigation has already been resolved in favor of the defendant Society by the prior cy pres decision of December 6, 1956. Granting that the decision of December 6, 1956, is not conclusive upon the plaintiffs, since they were not made parties to the proceeding, the fact remains that they were not necessary parties. Thus, eliminating for the purpose of this argument, the affirmative defense raised by the defendant Society of res judicata and/or collateral estoppel, plaintiffs have not overcome the stare decisis effect of the decision of December 6, 1956 {supra).
It follows, therefore, that although there may be merit to the contention that some part of the affirmative defenses may warrant dismissal, the remaining portions do not. However, whether they do or not need not be here passed upon, since the court does find that the complaint is legally insufficient on its face. The will is attached to and made a part of the complaint and this court is of the opinion that it clearly shows a general charitable intent, and, in the absence of an express provision for a reverter or gift over, coupled with the fact that the Supreme Court, New York County, held in the cy pres proceeding that the will did evince a general charitable intent, the defendant’s motion for summary judgment dismissing the complaint is granted. Plaintiffs’ motion to strike out the first, second, third, fourth and fifth affirmative defenses is denied.
Settle order on notice.